# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

D.H., a minor, by her next friends )
A.H., mother, and E.H., father, )
           )
           *Plaintiff,* )
v. )      Hon. William L. Campbell, Jr.
           )      Civil No. 3:22-cv-00570
WILLIAMSON COUNTY BOARD )
OF EDUCATION; JASON )
GOLDEN, in his official capacity as )
DIRECTOR OF THE )
WILLIAMSON COUNTY )
SCHOOLS; TENNESSEE )
DEPARTMENT OF EDUCATION; )
and PENNY SCHWINN, in her )
official capacity as )
COMMISSIONER OF THE )
TENNESSEE DEPARTMENT OF )
EDUCATION, )
           )
           *Defendants.* )

## THE TENNESSEE COMMISIONER AND DEPARTMENT OF EDUCATION'S RESPONSE IN OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

BACKGROUND .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 4

I.    Plaintiff Has Not Made the Showings Necessary to Support a Preliminary Injunction. .... 4

    A.    Plaintiff has no likelihood of success on the merits...................................................5

        1.    Plaintiff fails to establish a violation of Title IX. ........................................5

        2.    Plaintiff fails to establish a violation of the Equal Protection Clause........11

    B.    A preliminary injunction is not necessary to prevent irreparable harm.................17

    C.    The remaining equities weigh against preliminary injunctive relief. ....................19

        1.    The balance of harm does not favor Plaintiff.............................................19

        2.    The public interest does not favor Plaintiff................................................20

        3.    Plaintiff's delay in suing should foreclose preliminary relief....................20

II.    Any Injunction Should Be Limited to the Proper Scope of This Lawsuit. ...................... 21

    A.    This lawsuit is limited to seeking access for D.H. to the girls' bathrooms at the School. ..............................................................................................................21

    B.    The Court cannot pass on the validity of the Accommodations Act. ....................22

    C.    The Court cannot enjoin the Department from "enforcing" the Accommodations Act. ..............................................................................................23

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.M.C. v. Smith*,
No. 3:20-CV-00240, 2022 WL 3210809 (M.D. Tenn. Aug. 9, 2022) ..................................... 18

*ACLU of Ky. v. McCreary Cnty.*,
354 F.3d 438 (6th Cir. 2003) ...................................................................... 17

*Adams v. Sch. Bd.*,
3 F.4th 1299 (11th Cir. 2021) .................................................................. 6, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................. 23

*Bd. of Educ. v. Earls*,
536 U.S. 822 (2002)............................................................................ 14, 15

*Beard v. Whitmore Lake Sch. Dist.*,
402 F.3d 598 (6th Cir. 2005) .................................................................. 14

*Bennett v. New Jersey*,
470 U.S. 632 (1985).................................................................................. 8

*Bd. of Educ. v. U.S. Dep't of Educ.*,
208 F. Supp. 3d 850 (S.D. Ohio 2016) ...................................................... 17

*Bostock v. Clayton Cnty.*,
140 S. Ct. 1731 (2020)........................................................................... 8, 9

*Brannum v. Overton Cnty. Sch. Bd.*,
516 F.3d 489 (6th Cir. 2008) .................................................................. 13

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993)................................................................................. 11

*Calzone v. Hawley*,
866 F.3d 866 (8th Cir. 2017) .................................................................. 23

*Carcano v. McCrory*,
203 F. Supp. 3d 615 (M.D.N.C. 2016) ...................................................... 13

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
511 F.3d 535 (6th Cir. 2007) .................................................................. 18

ii

<u>**Cases**</u>

*Children's Healthcare Is a Legal Duty, Inc. v. Deters*,
    92 F.3d 1412 (6th Cir. 1996) ............................................................................................ 24

*Clark v. Jeter*,
    486 U.S. 456 (1988) ........................................................................................................ 13

*Clark v. Martinez*,
    543 U.S. 371 (2005) .......................................................................................................... 8

*Cont'l Can Co. v. Graham*,
    220 F.2d 420 (6th Cir. 1955) ......................................................................................... 20

*Cookish v. Powell*,
    945 F.2d 441 (1st Cir. 1991) .......................................................................................... 13

*D.T. v. Sumner Cnty. Schs.*,
    942 F.3d 324 (6th Cir. 2019) ........................................................................................... 4

*Disability Rights S.C. v. McMaster*,
    24 F.4th 893 (4th Cir. 2022) .......................................................................................... 23

*Dobbs v. Jackson Women's Health Org.*,
    142 S. Ct. 2228 (2022) ................................................................................................... 16

*Dodds v. U.S. Dep't of Educ.*,
    845 F.3d 217 (6th Cir. 2016) ......................................................................................... 10

*Doe v. Luzerne Cnty.*,
    660 F.3d 169 (3d Cir. 2011) .......................................................................................... 13

*Doe v. Metro. Gov't*,
    35 F.4th 459 (6th Cir. 2022) .......................................................................................... 15

*EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*,
    884 F.3d 560 (6th Cir. 2018) ........................................................................................... 9

*Eight Mile Style, LLC v. Spotify USA Inc.*,
    535 F. Supp. 3d 738 (M.D. Tenn. 2021) ................................................................. 10, 17

*EMW Women's Surgical Ctr., P.S.C. v. Beshear*,
    920 F.3d 421 (6th Cir. 2019) ......................................................................................... 24

**Page(s)**

<u>**Cases**</u>

*Enchant Christmas Light Maze & Mkt. v. Glowco, LLC*,
958 F.3d 532 (6th Cir. 2020) ............................................... 1, 4, 5, 12

*Etsitty v. Utah Transit Auth.*,
502 F.3d 1215 (10th Cir. 2007) .......................................................... 8

*Ex parte Young*,
209 U.S. 123 (1908)........................................................................... 24

*Faulkner v. Jones*,
10 F.3d 226 (4th Cir. 1993) .............................................................. 14

*Fortner v. Thomas*,
983 F.2d 1024 (11th Cir. 1993) ........................................................ 13

*Friendship Materials, Inc. v. Mich. Brick, Inc.*,
679 F.2d 100 (6th Cir. 1982) .............................................................. 4

*Frontiero v. Richardson*,
411 U.S. 677 (1973)............................................................................. 7

*Gale v. O'Donohue*,
751 F. App'x 876 (6th Cir. 2018) ..................................................... 18

*Geduldig v. Aiello*,
417 U.S. 484 (1974)........................................................................... 11

*Glauser-Nagy v. Med. Mut. of Ohio*,
987 F. Supp. 1002 (N.D. Ohio 1997)................................................ 20

*GMA Accessories, Inc. v. Positive Impressions, Inc.*,
181 F.3d 82 (2d Cir. 1999)................................................................... 4

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) ................................................... 6, 7, 12

*Hans v. Louisiana*,
134 U.S. 1 (1890)............................................................................... 24

*Johnston v. Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.*,
97 F. Supp. 3d 657 (W.D. Pa. 2015)................................................... 7

**Cases**

Page(s)

*Jones v. Caruso*,
569 F.3d 258 (6th Cir. 2009) ................................................................ 20

*Kowalski v. Tesmer*,
543 U.S. 125 (2004)............................................................................... 21

*Lee v. Downs*,
641 F.2d 1117 (4th Cir. 1981) .............................................................. 14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)............................................................................... 21

*Lyng v. Castillo*,
477 U.S. 635 (1986)............................................................................... 13

*Mazurek v. Armstrong*,
520 U.S. 968 (1977)............................................................................ 1, 4

*Memphis A. Phillip Randolph Inst. v. Hargett*,
473 F. Supp. 3d 789 (M.D. Tenn. 2020)........................................... 20, 21

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) .................................................................. 9

*Michael M. v. Superior Court*,
450 U.S. 464 (1981)............................................................................... 12

*Mississippi Univ. for Women v. Hogan*,
458 U.S. 718 (1982)............................................................................... 13

*Missouri v. Jenkins*,
515 U.S. 70 (1995)................................................................................. 20

*Nguyen v. INS*,
533 U.S. 53 (2001)....................................................................... 8, 12, 16

*Nordlinger v. Hahn*,
505 U.S. 1 (1992)................................................................................... 12

*O'Connor v. Bd. of Educ.*,
449 U.S. 1301 (1980)............................................................................. 16

**Cases**

*Ondo v. City of Cleveland*,
  795 F.3d 597 (6th Cir. 2015) ................................................. 13

*Pelcha v. MW Bancorp, Inc.*,
  988 F.3d 318 (6th Cir. 2021) ................................................. 9

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981) ................................................................. 8

*Pineda v. Hamilton Cnty.*,
  977 F.3d 483 (6th Cir. 2020) ............................................... 24

*Reform Am. v. City of Detroit*,
  37 F.4th 1138 (6th Cir. 2022) ......................................... 11, 12

*Seminole Tribe of Fla. v. Florida*,
  517 U.S. 44 (1996) ............................................................. 24

*Sharpe v. Cureton*,
  319 F.3d 259 (6th Cir. 2003) ............................................... 22

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
  251 F.3d 814 (9th Cir. 2001) ............................................... 17

*Skinner v. Ry. Labor Execs.' Ass'n*,
  489 U.S. 602 (1989) ........................................................... 14

*Smith v. City of Salem*,
  378 F.3d 566 (6th Cir. 2004) ............................................ 8, 9

*Tennessee v. U.S. Dep't of Educ.*,
  No. 3:21-CV-308, 2022 WL 2791450 (E.D. Tenn. July 15, 2022) ......................................... 10

*United Press Int'l, Inc. v. Glob. One News, Inc.*,
  2020 WL 2572483 (M.D. Tenn. May 21, 2020)......................... 22

*United States v. City of Loveland*,
  621 F.3d 465 (6th Cir. 2010) ............................................... 20

*United States v. O'Brien*,
  391 U.S. 367 (1968)............................................................. 16

Case 3:22-cv-00570   Document 30   Filed 08/16/22   Page 7 of 35 PageID #: 212

**Page(s)**

<u>Cases</u>

*United States v. Virginia*,
    518 U.S. 515 (1996) ........................................................................ 12, 13, 14, 16

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................ 21

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
    900 F.3d 250 (6th Cir. 2018) ........................................................ 21

*WCI, Inc. v. Ohio Dep't of Pub. Safety*,
    18 F.4th 509 (6th Cir. 2021) .......................................................... 21

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ........................................................................ 20

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................ 4

*Wisconsin Cent. Ltd. v. United States*,
    138 S. Ct. 2067 (2018) ................................................................... 6

<u>Statutes</u>

20 U.S.C. § 1681 ...................................................................................... 6, 17

20 U.S.C. § 1681(a) ................................................................................. 5, 9

20 U.S.C. § 1681(a)(2) ............................................................................ 6

20 U.S.C. § 1681(a)(B) ............................................................................ 6

20 U.S.C. § 1686 .................................................................................... 1, 5, 6, 7

42 U.S.C. § 1983 ...................................................................................... 23

42 U.S.C. § 2000e-2(a)(1) ....................................................................... 9

42 U.S.C. § 3613(c)(1) ............................................................................ 17, 18

Tenn. Code Ann. § 49-2-801 *et seq* ....................................................... 1, 3

Tenn. Code Ann. § 49-2-802(4) .............................................................. 3

Case 3:22-cv-00570   Document 30   Filed 08/16/22   Page 8 of 35 PageID #: 213

**Statutes (Cont.)**

Tenn. Code Ann. § 49-2-803(a)(1) ........................................................ 3

Tenn. Code Ann. § 49-2-805 ........................................................... 3, 22

U.S. Const. amend. XIV, § 1 ............................................................. 11

**Regulations**

34 C.F.R. § 106.33 ................................................................. 6, 7, 10

34 C.F.R. § 106.41(b) ..................................................................... 7

Dep't of Educ., *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020) ....................... 7

Dep't of Educ., *Preventing and Combating Discrimination on the Basis of Gender Identity and Sexual Orientation*, 86 Fed. Reg. 7023 (Jan. 20, 2021) ............................................. 13

**Other Authorities**

*Sexism in the "Bathroom Debates,"*
37 Yale L. & Pol'y Rev. 227 (2018) ................................................ 16

## INTRODUCTION

The Court should deny Plaintiff D.H.'s request for a preliminary injunction. The law allows that "extraordinary and drastic remedy" only upon a "*clear showing*" of an entitlement to equitable relief. *Enchant Christmas Light Maze & Mkt. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1977)). Plaintiff has not carried that burden here. For one, Plaintiff has failed to establish a likelihood of success on the merits: Plaintiff's pleadings ignore the provision in Title IX that *expressly allows* schools to maintain "separate living facilities," such as bathrooms, "for the different sexes." 20 U.S.C. § 1686. And, for the Equal Protection claim, Plaintiff fails to grapple with the biological differences between males and females or adequately address the important interests furthered by sex-separated bathrooms. Second, lacking a deprivation of rights, Plaintiff cannot identify any irreparable harm. Finally, the equities and public interest cut against preliminary relief, particularly given that Plaintiff delayed the filing of this suit until the first week of the new school year.

If the Court nevertheless issues an injunction, it should limit that injunction to providing D.H. relief: allowing D.H. to use the multi-occupancy girls' bathrooms at D.H.'s elementary school ("the School"). Any broader relief would fail as a matter of law because Plaintiff has *not* properly challenged the Tennessee Accommodations for All Children Act, Tenn. Code Ann. § 49-2-801 *et seq.*, or any action of the Tennessee Department of Education or its Commissioner, Penny Schwinn (collectively, "the Department").

## BACKGROUND[1]

D.H.—a biological boy—expressed the desire to assume a female gender identity at the School. D.E. 1 (Compl.) ¶¶ 30, 36, 47-48, 55. In January 2022, D.H.'s parents reached out to

---

[1] Nothing in this Response should be construed as an admission of fact.

School administrators about D.H.'s transition and how the School could provide support. *Id.* ¶¶ 8, 55. The School met with D.H.'s parents, used D.H.'s preferred pronouns, and implemented a number of changes to accommodate D.H. *Id.* ¶¶ 6, 49, 56, 59; D.E. 28 (J.J. Aff.) ¶¶ 3, 5, 6, 8, 9. But the School's bathrooms became a point of dispute. Compl. ¶¶ 58, 66.

The School has designated separate bathrooms for use by the different sexes: "boys' bathrooms" for biological males and "girls' bathrooms" for biological females. *See id.* ¶ 58. The School does not allow students to use multi-occupancy bathrooms designated for the opposite sex, irrespective of a student's gender identity. *See id.* Even so, the School took pains to accommodate D.H., who is uncomfortable using the boys' bathrooms. Most notably, it allowed D.H. to freely access and use four single-occupancy bathrooms in various places throughout the building. *See id.* ¶ 59; D.E. 29 (K.M. Aff.) ¶¶ 7-9. The School also "implemented a process in which a small group of male and female students, including D.H., would be sent to a single-occupancy restroom during group bathroom breaks so that D.H. would not be the only student using a single-occupancy restroom." J.J. Aff. ¶ 6. At the end of the school year, D.H.'s mother sent the School principal a handwritten "note thanking [her] for the support [the School] had provided D.H." *Id.* ¶ 11 (attaching note).

Nonetheless, in the summer of 2022, D.H.'s parents enrolled D.H. in a different elementary school. Compl. ¶ 85. This school was "constructed in a manner so as not to have multi-occupancy bathrooms." K.M. Aff. ¶ 3. But D.H. ultimately chose not to attend that elementary school; D.H. wanted to return to the School, so D.H.'s parents re-enrolled D.H. on July 12, 2022. Compl. ¶ 85.

Again seeking to accommodate D.H. and ameliorate previously expressed concerns, the School arranged for a key to be placed in D.H.'s desk that granted D.H. access to a single-occupancy bathroom "close to her classroom," along with "an ID indicating that she has

permission to be in this restroom." K.M. Aff. ¶ 7. The School also provided D.H. access to the single-occupancy special education bathroom that school staff and custodians will keep clean. *Id.* ¶ 8. Teachers were instructed that "should D.H. need to use the facilities at the time that a group restroom break is occurring, such as on the way to[ or ]from lunch, D.H. is to be given an 'errand' to run that will take her in the direction of the available restroom, so that she can go to a single-occupancy restroom without arousing the curiosity of her peers." *Id.* ¶ 9.

Unsatisfied with that arrangement—or any accommodation at all—Plaintiff filed suit to gain access to the girls' bathrooms at the School four days before the start of the school year. The Complaint alleges that D.H. has been subject to disfavored treatment in violation of Title IX of the Education Amendments of 1972 and the Equal Protection Clause of the United States Constitution. Compl. ¶¶ 118-51.

Plaintiff also purports to "challenge[]" the Tennessee Accommodations for All Children Act, Tenn. Code Ann. § 49-2-801, *et seq.*, though it is not clear how, *see* Compl. ¶ 1. Enacted in April 2021—before the start of *last* school year—the Act does not require any public school or local education agency ("LEA") to adopt a specific bathroom policy. Instead, it lays out an accommodations process for students who "[d]esire[] greater privacy when using a multi-occupancy restroom," *id.* § 49-2-803(a)(1), and grants a private right of action to students and school staff who "encounter[]" a person using a multi-occupancy bathroom designated for the opposite sex when "[t]he LEA or public school intentionally allowed" that person "to enter the multi-occupancy restroom . . . while other persons were present," *id.* § 49-2-805; *see also id.* § 49-2-802(4) (defining "sex" consistent with its ordinary meaning: "a person's immutable biological sex as determined by anatomy and genetics existing at the time of birth"). Despite focusing much

of the Complaint on this statute's allegedly "discriminat[ory]" nature, *e.g.*, Compl. ¶ 133, Plaintiff fails to challenge any provision of the Act or allege any actual enforcement of the Act.

The day after filing the Complaint (now three days before the start of the school year), Plaintiff moved for a preliminary injunction preventing all "Defendants from enforcing the [Act] and permitting Plaintiff to use the school facilities corresponding with [Plaintiff's] gender identity." D.E. 6 ("Mot. Mem.") at 25. For the reasons set out below, the Court should deny that motion.

## ARGUMENT

The Court has no basis for granting emergency relief, much less a sweeping preliminary injunction going beyond the confines of this suit. Plaintiff has not established the four prerequisites for preliminary relief. And, regardless, Plaintiff is not entitled to a broad order reaching beyond the facts and issues presented.

## I.     Plaintiff Has Not Made the Showings Necessary to Support a Preliminary Injunction.

A preliminary injunction is an "extraordinary and drastic remedy." *Glowco*, 958 F.3d at 539 (quoting *Mazurek*, 520 U.S. at 972). It "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Id.* To do so, "[a] plaintiff . . . *must* establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, *and* [4] that an injunction is in the public interest." *Id.* at 535-36 (quotation omitted) (emphases added); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (clarifying that the plaintiff must establish all four factors).[2] Even then, the Court retains discretion to deny or limit relief as it deems appropriate.

---

[2] To the extent other Sixth Circuit case law excuses a plaintiff from establishing all four factors, it is inconsistent with *Winter* and should be disregarded. *See D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 328 (6th Cir. 2019) (Nalbandian, J., concurring).

*Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 102-03 (6th Cir. 1982); *cf. GMA Accessories, Inc. v. Positive Impressions, Inc.*, 181 F.3d 82 (2d Cir. 1999) (unpublished) (noting that the district court could have denied equitable relief even if the plaintiff "had otherwise satisfied all of the prerequisites"). In this case, Plaintiff has not carried the burden of persuasion at any step of the analysis.

### A. Plaintiff has no likelihood of success on the merits.

Plaintiff's failure to show a "likelihood of success on the merits" is "fatal to [Plaintiff's] quest for a preliminary injunction." *Glowco*, 958 F.3d at 539 (cleaned up). Neither the Title IX claim nor the Equal Protection claim has merit.

### 1. Plaintiff fails to establish a violation of Title IX.

Plaintiff cannot establish that the School's bathroom policy violates Title IX.[3] Title IX and its implementing regulations explicitly allow schools to designate different bathrooms for use by different sexes. Plaintiff's contrary argument ignores the clear terms of those provisions and would have the Court adopt a strained, atextual conclusion from a mishmash of non-binding opinions.

**a.** Title IX states that "[n]o person . . . shall, on the basis of sex, . . . be subjected to discrimination" by any school that "receiv[es] Federal financial assistance." 20 U.S.C. § 1681(a); *see id.* § 1687. The statute also expressly explains that "nothing contained herein shall be construed to prohibit" schools "from maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686; *see also* 118 Cong. Rec. 5,807 (1972) (statement of Sen. Bayh, the chief Senate sponsor of Title IX) (explaining that § 1686 ensures that covered institutions may "permit

---

[3] Plaintiff contends that the Accommodations Act "precludes Plaintiff from using the multi-occupancy bathrooms that comport with [the student's] gender identity." Mot. Mem. 12. The Act does no such thing. The School's policy, not state law, imposes the relevant prohibition. *See supra* 2-4; *infra* Part II.B. But whatever the source of the biological-sex-based bathroom policy, Plaintiff's Title IX claim fails.

differential treatment by sex . . . in sports facilities or other instances where personal privacy must be preserved"). In other words, § 1686 expressly *allows* sex-separated bathrooms, clarifying that nothing in Title IX can be construed as forbidding such facilities. And the longstanding regulations implementing that provision confirm that institutions "may provide separate toilet, locker room, and shower facilities on the basis of sex," so long as the "facilities provided for students of one sex [are] comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33. The upshot is clear: Title IX does not prohibit designating separate bathrooms "on the basis of sex"; it expressly allows it. *See* 20 U.S.C. §§ 1681, 1686.

The meaning of "sex" in these provisions is equally clear: biological sex—male and female. This Court must interpret "words consistent with their ordinary meaning at the time Congress enacted the statute." *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (cleaned up). And when Congress enacted Title IX in 1972, "virtually every dictionary definition of 'sex' referred to the *physiological* distinctions between males and females—particularly with respect to their reproductive functions." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 632 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021) (Niemeyer, J. dissenting) (collecting dictionary definitions); *see also Adams v. Sch. Bd.*, 3 F.4th 1299, 1322 (11th Cir.) (W. Pryor, C.J., dissenting) (similar), *reh'g en banc granted, opinion vacated*, 9 F.4th 1369 (11th Cir. 2021).[4]

Statutory context confirms this understanding of sex. Other provisions in Title IX describe how an institution may change "from . . . admit[ting] only students of one sex to . . . admit[ting] students of *both* sexes," 20 U.S.C. § 1681(a)(2) (emphasis added), and also refer to ''Men's'' and ''Women's'' associations and organizations for ''Boy[s]'' and ''Girls,'' "the membership of which has traditionally been limited to persons of one sex," *id.* § 1681(a)(6)(B). Title IX

---

[4] The Eleventh Circuit, sitting en banc, heard oral argument in the *Adams* case in February 2022.

regulations "expressly acknowledg[e] physiological differences between the male and female sexes." Dep't of Educ., *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026, 30,178 (May 19, 2020); *see, e.g.*, 34 C.F.R. § 106.41(b) (allowing schools to create separate sports teams "for members of each sex where selection . . . is based upon competitive skill or the activity involved is a contact sport"). And Supreme Court precedent from the time of Title IX's enactment repeats the common understanding that "sex, like race and national origin, is an immutable characteristic determined [at] birth." *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (opinion of Brennan, J.).

Put simply, "Title IX and its implementing regulations clearly permit schools to provide students with certain sex-segregated spaces, including bathroom[s], . . . to perform certain private activities and bodily functions consistent with an individual's birth sex." *Johnston v. Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.*, 97 F. Supp. 3d 657, 678 (W.D. Pa. 2015)). The School's separation of bathrooms based on biological sex comports with Title IX.

**b.** Lacking a response, Plaintiff ignores the governing text altogether. Plaintiff fails to acknowledge 20 U.S.C. § 1686's authorization of sex-separated facilities, fails to address 34 C.F.R. § 106.33's allowance of sex-separated bathrooms, and fails to make *any* colorable argument that "sex" refers to something other than the biological distinction between males and females. Plaintiff likewise does not explain how sex-separated bathrooms constitute "discrimination" under Title IX when, "[f]or purposes of restroom usage," D.H. is "not similarly situated to students who were born as biological [fe]males." *Grimm*, 972 F.3d at 628 (Niemeyer, J., dissenting); *see also infra* Part I.A.2.b.

What is more, Plaintiff's interpretation would render Title IX unconstitutional under the Spending Clause, yet another issue Plaintiff fails to address. *See* Mot. Mem. 12-16. Congress

imposed Title IX's obligations through Spending Clause legislation. But "[t]he legitimacy of Congress'[s] power to" direct state and local policy through the Spending Clause "rests on whether the State[s] voluntarily and knowingly accept[]" the obligations attached to federal funding. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). That means that if "Congress intends to impose a condition on the grant of federal moneys" through the spending power, as it did under Title IX, "it must do so unambiguously." *Id.* But, whatever else it might say, Title IX does *not* contain an *unambiguous* prohibition on sex-separated bathrooms. *See supra* Part I.A.1.a; *see also Bennett v. New Jersey*, 470 U.S. 632, 638 (1985) (providing that a State's obligation under cooperative federalism programs "generally should be determined by reference to the law in effect when the grants were made"). Thus, Plaintiff's interpretation raises "serious constitutional doubts" that should be avoided. *See Clark v. Martinez*, 543 U.S. 371, 381, 385 (2005).

**c.** Rather than engage in a substantive analysis, Plaintiff attempts to piece together prior case law to support the desired conclusion. Plaintiff starts by pointing to a sex-stereotyping case involving a fire department employee who was suspended for "failure to conform to sex stereotypes concerning how a man should look and behave." *Smith v. City of Salem*, 378 F.3d 566, 572 (6th Cir. 2004); *see* Mot. Mem. 12 (citing *Smith*). But the School's bathroom policy does not turn on "stereotypical" gender norms, like the notion that women wear dresses and men wear suits. Rather, the policy "assigns bathrooms by sex, which is not a stereotype." *Adams*, 3 F.4th at 1333-34 (W. Pryor, C.J., dissenting); *see also Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007) ("Use of a restroom designated for the opposite sex does not constitute a mere failure to conform to sex stereotypes."), *abrogated on other grounds by Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020). As the Supreme Court has recognized, "[m]echanistic classification of all

8

our differences as stereotypes would operate to obscure those misconceptions and prejudices that are real." *Nguyen v. INS*, 533 U.S. 53, 73 (2001).

Plaintiff also errs in relying on opinions that interpret Title VII and *not* Title IX. *See* Mot. Mem. 12-14 (citing and discussing *Smith*, *Bostock*, and *EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018)). As the Sixth Circuit recently explained, "Title VII differs from Title IX in important respects." *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021). Those differences matter here: Unlike Title VII, Title IX explicitly *authorizes* sex-separated facilities. *Id.*; *see supra* Part I.A.1.a. In addition, Title IX prohibits discrimination "on *the basis* of sex," 20 U.S.C. § 1681(a) (emphasis added), whereas Title VII prohibits discrimination "because of . . . sex," 42 U.S.C. § 2000e-2(a)(1). It therefore "does not follow that principles announced in the Title VII context automatically apply in the Title IX context." *Meriwether*, 992 F.3d at 510 n.4.

*Bostock* does not say otherwise. *Bostock* resolved a single question: whether terminating an employee "simply for being homosexual or transgender" constitutes discrimination "'because of . . . sex'" under Title VII. 140 S. Ct. at 1737-38 (quoting 42 U.S.C. § 2000e-2(a)(1)). *Bostock*, however, "proceed[ed] on the assumption that 'sex' . . . refer[s] only to biological distinctions between male and female." 140 S. Ct. at 1739. And in reaching its Title VII holding, the Court explicitly declined to address "other federal . . . laws that prohibit sex discrimination" or opine on the legality of "sex-segregated bathrooms." *Id.* at 1753; *see also Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) (recognizing *Bostock*'s "narrow reach"). Understandably so. While "[a]n individual's homosexuality or transgender status *is not relevant* to employment decisions" about hiring and firing, *Bostock*, 140 S. Ct. at 1741 (emphasis added), sex *is relevant* to decisions

about bathrooms, locker rooms, showers, and the like, where biological differences between the two sexes matter.

The few Title IX cases Plaintiff does cite offer thin logic and limited guidance. Most come from district courts or other circuits, *see* Mot. Mem. 13, which this Court need not follow, *See Eight Mile Style, LLC v. Spotify USA Inc.*, 535 F. Supp. 3d 738, 746 n.1 (M.D. Tenn. 2021). And Plaintiff relies only on the conclusion of these cases, not their reasoning. *See* Mot. Mem. 13. It is the legal *analysis*, not a court-counting exercise, that should dictate. And the divided motions-panel ruling in *Dodds v. U.S. Department of Education*, 845 F.3d 217 (6th Cir. 2016) (per curiam), offers Plaintiff little support. *Dodds* did not, in fact, hold that a school violated Title IX by excluding a male from the girls' bathroom; it merely declined to stay a preliminary injunction because it was "not convinced" that the school would show an abuse of discretion in the forthcoming appeal. *Id.* at 221-22.

Finally, in a footnote, Plaintiff relies on a notice from the Department of Education purporting to interpret Title IX. *See* Mot. Mem. 14. But that notice ignores the currently binding Department of Education regulations allowing sex-separated bathrooms. *See* 34 C.F.R. § 106.33. The notice also disregards the position taken by the Department just months before, when it concluded that, even after *Bostock*, bathrooms based on sex are permitted, and "sex" in Title IX "should be construed to mean biological sex, male or female." *See* U.S. Dep't of Educ., Memorandum for Kimberly M. Richey Acting Assistant Secretary of the Office for Civil Rights (Jan. 8, 2021), https://bit.ly/3mwKI7H. And, importantly, the notice Plaintiff cites has been enjoined because, in a haste to implement the Biden Administration's policy directives, the Department failed to follow the required notice-and-comment procedures. *See Tennessee v. U.S. Dep't of Educ.*, No. 3:21-CV-308, 2022 WL 2791450, at *21 (E.D. Tenn. July 15, 2022).

Put simply, statutory text should guide this Court's inquiry, and the text is clear. Title IX permits sex-separated bathrooms. There is no likelihood of success on the Title IX claim.

### 2. Plaintiff fails to establish a violation of the Equal Protection Clause.

Nor can Plaintiff establish that the School's bathroom policy violates the Equal Protection Clause. The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The School's sex-separated bathrooms do not run afoul of that mandate.

**a.** *Identifying the Class*. The threshold inquiry in an Equal Protection analysis is identifying the classification challenged. *See Geduldig v. Aiello*, 417 U.S. 484, 494 (1974). The School's bathroom policy assigns bathrooms based on biological sex. To state the obvious, that is a sex-based classification. Plaintiff claims that the policy "target[s] transgender individuals." Mot. Mem. 16. But nothing in the bathroom policy distinguishes between transgender and non-transgender students. The policy creates two groups: (1) students who can use the boys' bathrooms—biological males—and (2) students who can use the girls' bathrooms—biological females. Because each of these groups can contain both transgender students and non-transgender students, a "lack of identity" exists between the policy and transgender status—meaning that transgender status is not the classification at issue. *See Geduldig*, 417 U.S. at 496 n.20; *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271 (1993) (applying the same principle to reject the proposition that restrictions on voluntary abortion "*ipso facto* . . . discriminate invidiously against women as a class"). Properly understood, the policy at issue involves a sex-based classification.

**b.** *Analyzing Similarly-Situated Persons*. After identifying the classification at issue, the Court must determine whether a plaintiff has established "that the government treated the plaintiff

disparately as compared to similarly situated persons." *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022) (quotation omitted). "To be 'similarly situated' for purposes of an equal-protection claim, the plaintiff and the comparator must be alike 'in all relevant respects.'" *Id.* (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

For purposes of using the bathroom, biological boys and biological girls are not "alike in all the relevant respects." *Id.* (quotation omitted). Boys and girls have different anatomical parts. These "anatomical differences are at the root of why communal restrooms are generally separated on the basis of sex." *Grimm*, 972 F.3d at 636 (Niemeyer, J., dissenting). This is not a sex-based classification being "used, as they once were, to create or perpetuate the legal, social, and economic inferiority of" a particular sex. *United States v. Virginia*, 518 U.S. 515, 534 (1996) (citation omitted). It is a policy responding to inherent "differences between men and women." *Id.* at 533. And the Supreme Court has "consistently upheld statutes where the gender classification . . . realistically reflects the fact that the sexes are not similarly situated in certain circumstances." *Michael M. v. Superior Court,* 450 U.S. 464, 469 (1981) (plurality opinion); *see also Nguyen*, 533 U.S. at 59 (holding that a law premised on biological differences was "consistent with the constitutional guarantee of equal protection").

Plaintiff presents no argument to the contrary, ignoring the similarly-situated inquiry altogether. That is unsurprising, as the "[p]hysical differences between men and women . . . are enduring." *Virginia*, 518 U.S. at 533. And it should mark the end of this Court's analysis, as Plaintiff bears the burden of making a "*clear showing*" of entitlement to emergency relief. *Glowco*, 958 F.3d at 539.

**c.** *Determination of Appropriate Standard of Review*. If, however, the Court finds the similarly-situated requirement satisfied, it must determine the appropriate standard of review based

on the classification at issue. The answer to that question is easy: intermediate scrutiny. The Supreme Court has repeatedly held that intermediate scrutiny applies to quasi-suspect classes, like "classifications based on sex." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Plaintiff agrees that intermediate scrutiny would apply but draws that conclusion for the wrong reason.[5] This Court need not resolve that dispute, though. Either way, intermediate scrutiny applies.

**d.** *Application of Standard of Review*. To withstand intermediate scrutiny, the challenged classification must (1) serve "important governmental objectives," and (2) employ means "substantially related to the achievement of those objectives." *Virginia*, 518 U.S. at 533 (quoting *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)). The bathroom policy at issue satisfies both of these requirements.

*First*, the assignment of bathrooms based on sex furthers important objectives—privacy and safety. "There is no question that the protection of bodily privacy is an important government interest." *Carcano v. McCrory*, 203 F. Supp. 3d 615, 641 (M.D.N.C. 2016). Courts have long recognized a "special sense of privacy" in avoiding bodily exposure—an interest that is heightened "in the presence of people of the other sex." *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) (quotation marks omitted); *see also Cookish v. Powell*, 945 F.2d 441, 446 (1st Cir. 1991);

---

[5] Contrary to D.H.'s assertion that "transgender individuals constitute a quasi-suspect class," Mot. Mem. at 16, "[t]he Supreme Court has never defined a suspect or quasi-suspect class on anything other than a trait that is definitively ascertainable at the moment of birth, such as race or biological [sex]." *Ondo v. City of Cleveland*, 795 F.3d 597, 609 (6th Cir. 2015). Moreover, D.H. has not even attempted to establish that transgender individuals (1) have "been subjected to discrimination" "[a]s a historical matter," (2) exhibit "immutable" "characteristics that define them as a discrete group," and (3) are "politically powerless." *Lyng v. Castillo*, 477 U.S. 635, 638 (1986). And D.H. could not satisfy these factors because, among other reasons, transgender status is not "immutable"; a person's stated gender identity is often fluid. In addition, D.H. cannot possibly establish that transgender individuals are politically powerless given the actions taken by the current presidential administration. *See, e.g.*, Exec. Order No. 13,988, *Preventing and Combating Discrimination on the Basis of Gender Identity and Sexual Orientation*, 86 Fed. Reg. 7023 (Jan. 20, 2021).

*Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008); *Doe v. Luzerne Cnty.*, 660 F.3d 169, 176-77 (3d Cir. 2011). "[S]ociety's undisputed approval of separate public rest rooms for men and women [is] based on [those] privacy concerns." *Faulkner v. Jones*, 10 F.3d 226, 232 (4th Cir. 1993).

As then-Professor Ruth Bader Ginsburg explained, "[s]eparate places to . . . perform personal bodily functions are permitted, in some situations required, by regard for individual privacy." Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post, Apr. 7, 1975, at A21, https://wapo.st/3C87hYo. That makes sense. "[E]xcretory function[s are] traditionally shielded by great privacy." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 626 (1989). And "[m]ost people . . . have a special sense of privacy in their genitals"—which are often at their most exposed in the bathroom. *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981). That sense of privacy is particularly important for minors. *Cf. Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 604 (6th Cir. 2005) ("Students of course have a significant privacy interest in their unclothed bodies.").

Indeed, the Supreme Court has already recognized the importance of these privacy interests. Even as the Court required the Virginia Military Institute to enroll women, it acknowledged that "[a]dmitting women to VMI would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements." *Virginia*, 518 U.S. at 550 n.19 (citing Br. for Petr. at 27-29 (contending that integrating VMI would not require the sexes to be together "when sleeping, dressing and using the bathroom")). Thus, the very case setting out intermediate scrutiny for sex-based classifications simultaneously acknowledged that important privacy interests would require separation in instances like those presented here.

In addition to these privacy interests, schools have a safety interest in sex-separated bathrooms. "[I]n a public school environment . . . the State is responsible for maintaining discipline, health, and safety." *Bd. of Educ. v. Earls*, 536 U.S. 822, 830 (2002). That means safety for *all students*. Contrary to Plaintiff's misguided view, the School and the law cannot "show more concern for [D.H.'s] safety, than the safety of [D.H.'s] non-transgender peers." Mot. Mem. 21. And bathrooms, as one of the few unsupervised areas in a school, undoubtedly pose heightened risks to student "discipline, health, and safety." *Earls*, 536 U.S. at 830. One does not have to agree with the "'transgender predator' myth," Mot. Mem. 20, to recognize the risk associated with mixing the biological sexes in unsupervised areas where heightened bodily exposure is inherent. *Cf. Doe v. Metro. Gov't*, 35 F.4th 459, 464 (6th Cir. 2022) (noting that, in Metro Nashville alone, documentation from 2012 to 2016 shows "over 950 instances of sexual harassment, over 1200 instances of inappropriate sexual behavior, 45 instances of sexual assault, and 218 instances of inappropriate sexual contact"—many of which occurred in the bathrooms). Sex-separated bathrooms constitute a common-sense measure that furthers schools' important interest in protecting students—both transgender and non-transgender.

Plaintiff cannot negate or diminish these interests by simply providing a bullet list of non-binding cases. *See* Mot. Mem. 19. Nor can Plaintiff erase these interests by casting aspersions at the Accommodations Act. *See* Mot. Mem. 17-18. The Act does not prevent D.H. from using the girls' bathrooms; the School's bathroom policy does that. *See supra* 2-4; *infra* Part II.B. And Plaintiff makes no argument whatsoever that the School enacted this policy for improper purposes. *See* Mot. Mem. 17-18. Even if the Act were at issue, Plaintiff cannot impugn its basis with nothing more than cherry-picked statements from two legislators (one of whom *opposed* the bill), particularly when the statements themselves reflect no discriminatory intent. *See* Mot. Mem.17-

18 (quoting two benign statements). "Even when an argument about legislative motive is backed by statements made by legislators who voted for a law, [the Supreme Court] ha[s] been reluctant to attribute those motives to the legislative body as a whole" because "'[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it.'" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022) (quoting *United States v. O'Brien*, 391 U.S. 367, 384 (1968)). In short, the arguments presented by Plaintiff do not cast doubt on the established and vitally important interests that support sex-separated bathrooms—privacy and safety.

*Second*, the School's bathroom policy is "substantially related to the achievement" of its objective to protect privacy and safety. *Virginia*, 518 U.S. at 533. The substantially-related inquiry does not "require[ ] that the [policy] under consideration . . . be capable of achieving its ultimate objective in every instance." *Nguyen*, 533 U.S. at 70. Nor does it "require that [the policymaker] elect one particular mechanism" to accomplish its objective. *Id.* at 63. A "substantial" relation between the policy and the objective will do. *Cf. O'Connor v. Bd. of Educ.*, 449 U.S. 1301, 1306-07 & n.4 (1980) (Stevens, J., in chambers) (noting that, even if the requirement of sex-separated athletic teams "appear[ed] arbitrary in an individual case," the policy's validity depended on its operation "in most of its normal applications").

The School's policy undoubtedly satisfies that standard: By separating bathrooms by sex, the policy removes the risk of bodily exposure to the opposite sex where it is most likely to occur and limits safety risks in unsupervised areas in a school. *See supra* 13-16. The policy thus directly furthers important objectives—privacy and safety—through a rule that "dates back as far as written history will take us." W. Burlette Carter, *Sexism in the "Bathroom Debates*,*"* 37 Yale L. & Pol'y Rev. 227, 287-88 (2018).

In short, the School's separation of bathrooms based on sex does not violate the Equal Protection Clause because males are not similarly situated to females for purposes of using the bathroom. And, even if they were, sex-separated bathrooms further important privacy and safety interests—interests that the Supreme Court itself has recognized warrant sex separation.

**B.     A preliminary injunction is not necessary to prevent irreparable harm.**

Plaintiff also fails to show that the requested injunction will prevent irreparable harm. Plaintiff offers two distinct arguments; both fail.

*First*, Plaintiff says irreparable harm necessarily flows from a deprivation of rights, *see* Mot. Mem. 21. Not so. Although a demonstrated "threat[]" to Fourteenth Amendment rights could "mandate[]" "a finding of irreparable harm," *ACLU of Ky. v. McCreary Cnty.*, 354 F.3d 438, 445 (6th Cir. 2003), Plaintiff has established no such threat. *See supra* Part I.A.2. And even if Plaintiff had shown a likelihood of success on the Title IX claim, *but see supra* Part I.A.1, that still would not raise a presumption of irreparable harm. Plaintiff points solely to *Board of Education of the Highland Local School District v. U.S. Department of Education*, 208 F. Supp. 3d 850, 878 (S.D. Ohio 2016), to support that proposition, *see* Mot. Mem. 21, but this Court should disregard *Highland*'s nonbinding and cursory analysis, *see Eight Mile*, 535 F. Supp. 3d at 746 n.1. In lieu of actual reasoning, the *Highland* court justified its finding by citing the Ninth Circuit's decision in *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001). *See Highland* 208 F. Supp. 3d at 878. But the *Highland* court completely ignored a crucial detail: the *Silver Sage* presumption applies only to requests for *permanent* injunctive relief under statutes *expressly* offering that remedy to any plaintiff who prevails on the merits. *See, e.g.*, *Silver Sage*, 251 F.3d at 827 (applying 42 U.S.C. § 3613(c)(1)). Plaintiff, by contrast, wants an injunction issued *prior* to a merits decision under a statute that does not even grant an express right of action,

much less an explicit right to any form of injunction. *Compare* 42 U.S.C. § 3613(c)(1), *with* 20 U.S.C. § 1681. Because Plaintiff has not carried the burden of showing why *Silver Sage* should apply here, the Court cannot "presume" irreparable harm from the merits of the Title IX claim.

*Second*, Plaintiff mistakenly looks for irreparable harm in Plaintiff's experiences at the School. But Plaintiff cannot satisfy the irreparable harm test by simply identifying injuries; Plaintiff must present "forward-looking" harms that preliminary relief will *prevent*. *A.M.C. v. Smith*, No. 3:20-CV-00240, 2022 WL 3210809, at *5 (M.D. Tenn. Aug. 9, 2022) (quoting *Gale v. O'Donohue*, 751 F. App'x 876, 884 (6th Cir. 2018)); *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). In this case, Plaintiff points to harms untethered from any possible injunctive relief. In Plaintiff's own words, exclusion from the girls' bathrooms has "requir[ed D.H.] to continuously 'out' herself as transgender," leading to "feelings of marginalization, isolation, distress, anxiety, and discomfort," as well as "significant bullying and harassment by her peers." Mot. Mem. 21-23. Regrettable as that may be, an injunction cannot fix it. D.H. was born male and presented as a boy in kindergarten. *See* D.E. 7 (A.H. Decl.) ¶¶ 8, 14, 19-20. D.H. then started presenting as a girl and using single-occupancy bathrooms after returning to school this past January. *See id.* ¶¶ 30-35. It is thus hard to imagine how anyone at D.H.'s school could remain unaware of D.H.'s social transition, which explains why Plaintiff identifies no such person in any of Plaintiff's filings.

And even if Plaintiff had identified such a person, the motion still does not explain how court-ordered access to the girls' bathrooms will ameliorate—rather than exacerbate—the ill treatment D.H. has received from other children. Indeed, Plaintiff claims classmates yelled at Plaintiff specifically because Plaintiff *did* use the girls' bathroom, *see id.* ¶ 66, and this Court could not possibly control what elementary school children say on the bus or playground, *see id.* ¶¶

69-70.  Plaintiff has therefore failed to connect the injunction request to Plaintiff's alleged problems, and the Court has no basis for wielding equity power to a fruitless end.

###### C.  The remaining equities weigh against preliminary injunctive relief.

The remaining equities cut further against relief.  Plaintiff claims that an injunction would not burden other parties, but Plaintiff's own papers belie that assertion.  Plaintiff likewise ignores the public's interest in allowing schools to be run by local administrators, rather than unelected judges.  Finally, and most importantly, Plaintiff fails to account for Plaintiff's own undue delay, which weighs strongly against equitable relief.  The Court can and should deny the motion on these independent grounds.

####### 1.  The balance of harm does not favor Plaintiff.

Plaintiff conspicuously ignores the harm to others that would result from the requested court order.  Indeed, Plaintiff does not even acknowledge the privacy interests of other students or attempt to explain how those interests might be preserved.  *See supra* Part I.A.2.d.  Instead, Plaintiff claims that the government "cannot point to any possible harms" because other schools in other places have adopted Plaintiff's preferred bathroom policy without "caus[ing] any disruption."  Mot. Mem. 24.  But even under Plaintiff's telling, this Court has different facts before it.  According to D.H.'s mother, D.H.'s peers and community have *not* sat motionless or embraced D.H.'s gender transition.  D.H. faces "argumentative and hostile" classmates, A.H. Decl. 7 ¶ 22; *see id.* ¶¶ 44-45, allegedly unhelpful teachers, *see id.* ¶¶ 42, 44, 46-47, and a lack of acceptance from other parents, *see id.* ¶ 23.  In fact, students have taken issue with the very thing Plaintiff wants the Court to mandate: D.H.'s access to the girls' bathrooms.  *See id.* ¶ 43.  These allegations indicate that distress and discomfort will befall many people, including young children, if the Court grants Plaintiff's motion.  That, alone, forecloses relief.

## 2. The public interest does not favor Plaintiff.

The public interest also cuts against this Court's intervention, especially at this early stage. Plaintiff's contrary argument rests entirely on the erroneous theory that sex-separated bathrooms constitute unlawful discrimination. *See* Mot. Mem. 24-25. But Plaintiff has not shown a likelihood of success on the asserted claims, *see supra* Part I.A, much less proven that anyone has *actually* "violat[ed] . . . constitutional" or statutory "rights." Mot. Mem. 24 (quoting *Jones v. Caruso*, 569 F.3d 258, 278 (6th Cir. 2009)).

And regardless, this Court should exercise caution before wading into knotty issues of state and community policy, *cf. Missouri v. Jenkins*, 515 U.S. 70, 88 (1995) (noting "the interests of state and local authorities in managing their own affairs" (quotation omitted)), especially on an undeveloped record, *see Glauser-Nagy v. Med. Mut. of Ohio*, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997) (noting that a mandatory preliminary injunction should not issue "unless the facts . . . clearly favor the moving party"). The public interest favors local control of schools by politically accountable leaders, not governance by unelected judges.

## 3. Plaintiff's delay in suing should foreclose preliminary relief.

Plaintiff's dilatory tactics provide a separate equitable consideration that justifies denial of the motion for preliminary injunctive relief. This Court's power to issue injunctions is bounded by the principles of equity, *see Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982), and "equity will not aid those who have slept upon their rights," *Cont'l Can Co. v. Graham*, 220 F.2d 420, 422 (6th Cir. 1955). The doctrine of laches thus undermines Plaintiff's motion if Plaintiff's "lack of diligence" has "prejudice[d]" Williamson County or the Department. *Memphis A. Phillip Randolph Inst. v. Hargett*, 473 F. Supp. 3d 789, 793 (M.D. Tenn. 2020) (quoting *United States v. City of Loveland*, 621 F.3d 465, 473 (6th Cir. 2010)).

20

Here, Plaintiff's lack of diligence has resulted in prejudice to the defendants. Plaintiff went back to the School in January 2022 and used single-occupancy bathrooms, consistent with School policy, for the entire spring semester. A.H. Decl. ¶ 37. Throughout the spring semester, and all summer long, Plaintiff did not press the (supposed) right to use the girls' bathrooms. Indeed, Plaintiff waited until the beginning of August—just days before school started up again—to file this lawsuit and request preliminary relief. Under these circumstances, the Court can "presume[]" "a certain amount of prejudice" to the School, which now has no time to consider or adopt different policies. *Hargett*, 473 F. Supp. 3d at 800.

Even without that presumption, the prejudice is still palpable: If an injunction issues now, at the beginning of the school year, it will disrupt the inherently-hectic process of reacclimating students to the school environment. Not to mention the possible disruption to other students and their families: Given the delay, families disturbed by D.H. entering the girls' bathroom would be forced to transfer schools or pursue other arrangements in the middle of the school year. This would further disrupt administration of the School and the school district more broadly.

## II. Any Injunction Should Be Limited to the Proper Scope of This Lawsuit.

If the Court does issue an injunction, it should tailor relief to this lawsuit's proper boundaries. Specifically, the Court should do no more than order the School to grant D.H. access to the multi-occupancy girls' bathrooms. The Court has no broader power to pass on the validity of the Accommodations Act or direct the Department's actions.

### A. This lawsuit is limited to seeking access for D.H. to the girls' bathrooms at the School.

Plaintiff's request for an injunction "permitting [Plaintiff] to use the multi-occupancy girls' restrooms at the Elementary School" marks the limit of appropriate relief. Mot. Mem. 25. Plaintiff cannot sue to vindicate the rights of others, *see Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)

(citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)), or redress "'conjectural' or 'hypothetical'" harms, *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 515 (6th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Instead, Plaintiff must have a concrete, personal injury to undergird each claim and a sound theory of redressability to support preliminary injunctive relief. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018). To the extent Plaintiff sues to vindicate a (supposed) personal right to use the girls' bathrooms at the School, Plaintiff meets those requirements. *See* Compl. ¶¶ 132, 137-41. But any injunction reaching beyond Plaintiff's own circumstances would be "overly broad" and "completely unnecessary to provide [Plaintiff] the relief to which [Plaintiff is supposedly] entitled." *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003); *United Press Int'l, Inc. v. Glob. One News, Inc.*, 2020 WL 2572483, at *5 (M.D. Tenn. May 21, 2020) (Campbell, Jr., J.) (limiting injunction to the specific trademarks at issue and to the defendants properly in the case).

### B. The Court cannot pass on the validity of the Accommodations Act.

For similar reasons, the Court cannot judicially review or enjoin enforcement of the Accommodations Act because Plaintiff has not, in fact, challenged the validity or enforcement of the Accommodations Act. That law does not dictate the bathroom policies at Williamson County Schools. Instead, it grants students and faculty the right to sue their schools for any "psychological, emotional, [or] physical harm" that may result from encountering a "member of the opposite sex" in a multi-occupancy bathroom when "[t]he LEA or public school intentionally allowed a member of the opposite sex to enter the multi-occupancy restroom or changing facility while other persons were present." Tenn. Code Ann. § 49-2-805. This is not one of those lawsuits, so it is not clear exactly what Plaintiff wants enjoined.

Although the School may have developed its bathroom policies to avoid liability under the Act, D.H. provides no basis for asserting that the School's course was a necessary, or even prudent, response to the law. Indeed, Plaintiff's eagerness to challenge the Act leaves Plaintiff arguing two inherently contradictory positions. For purposes of the balance of hardships, Plaintiff claims that *no "possible harms"* would come from allowing D.H. to use the girls' bathroom. Mot. Mem. 24 (emphasis added). But Plaintiff simultaneously attempts to challenge the Accommodations Act because students and faculty could bring suit for any "psychological, emotional, [or] physical harm" suffered from allowing D.H. to use the girls' bathrooms. Plaintiff cannot have it both ways: Harm will either occur or it will not. At bottom, this case simply does not implicate the validity of the Accommodations Act, and the Court thus has no occasion to address that issue.

**C.** **The Court cannot enjoin the Department from "enforcing" the Accommodations Act.**

Separately, but relatedly, the Court cannot properly "enjoin[]" the *Department* "from enforcing the" Accommodations Act, whether in Williamson County or elsewhere. Mot. Mem. 25. This lawsuit challenges the School's bathroom policy, which prevents D.H. from exercising the personal rights Plaintiff claims to have under Title IX and the Fourteenth Amendment. *See supra* Part II.A. The lawsuit does not concern any enforcement of the Accommodations Act carried out by the Department. *See supra* Part II.B. That prevents the Court from issuing the injunction that Plaintiff has requested.

For one, Plaintiff lacks standing to seek an injunction against the Department because Plaintiff cannot establish an injury traceable to the Department's conduct and redressable by preliminary relief. *See Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) ("Article III standing to sue each defendant . . . requires a showing that each defendant caused [the plaintiff's] injury and that an order of the court against each defendant could redress the injury."). Indeed, since the

23

Department "has no role in enforcing" the Act, "it follows that" Plaintiff cannot trace any harm through the Act to the Department. *Disability Rights S.C. v. McMaster*, 24 F.4th 893, 902 (4th Cir. 2022).

Second, Plaintiff lacks a right of action against the Department under 42 U.S.C. § 1983. "Because vicarious liability is inapplicable to . . . § 1983 suits," a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" or federal law. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A § 1983 claimant must also show "a causal connection between the defendant's unconstitutional action and the plaintiff's injury." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490 (6th Cir. 2020) Plaintiff has not—and cannot—show as much, because the Department played no role in enforcing the School's bathroom policy.

Third, for the Equal Protection claim, Plaintiff cannot overcome Tennessee's sovereign immunity. Generally, a State is not "amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)). The Supreme Court, in *Ex parte Young*, 209 U.S. 123 (1908), created an exception to that rule, allowing suit in against state officials when the official has "some connection with the enforcement of the [allegedly unconstitutional statute]," *id*. at 157. But the "[g]eneral authority to enforce the laws of the state is not sufficient" to invoke that exception. *Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (quotation marks omitted). Here, because the Department "has neither enforced nor threatened to enforce the" Accommodations Act, *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 445 (6th Cir. 2019) (quotation omitted), it remains immune from the Equal Protection claim.

24

In short, Plaintiff has not carried the burden of justifying an injunction, much less the sweeping, premature relief Plaintiff requests.

## CONCLUSION

The Court should deny the motion for preliminary injunctive relief.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

J. MATTHEW RICE*
Special Assistant to the Solicitor General

CLARK L. HILDABRAND
Assistant Solicitor General

GABRIEL KRIMM*
Honors Fellow, Office of the Solicitor General

/s/*Alexander S. Rieger*
ALEXANDER S. RIEGER
Senior Assistant Attorney General
Public Interest Division
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 741-2408
BPR No. 029362
Alex.rieger@ag.tn.gov

*Counsel for the Tennessee Department of Education and its Commissioner*

*Application for Admission Pending

## CERTIFICATE OF SERVICE

I certify that I filed the above document using the Court's CM/ECF system on August 16, 2022, which electronically served a copy to all counsel of record:

Tricia Herzfeld
BRANSTETTER STRANCH & JENNINGS PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville TN, 37203
triciah@bsjfirm.com

Adam S. Lurie
Sean Mooney
Benjamin Kurland
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
Adam.lurie@linklaters.com
Sean.mooney@linklaters.com
Benjamin.kurland@linklaters.com

Jason Starr
Ami Patel
HUMAN RIGHTS CAMPAIGN FUND
1640 Rhode Island Avenue NW
Washington, DC 20036
Jason.Starr@hrc.org
Ami.Patel@hrc.org

Lisa M. Carson
Buerger Moseley & Carson PLC
306 Public Square
Franklin, TN 37064
lcarson@buergerlaw.com

/s/*Alexander S. Rieger*
ALEXANDER S. RIEGER
Senior Assistant Attorney General