IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| D.H., a minor, by her next friends A.H., mother, and E.H. father, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 3:22-cv-00570 ) ) JUDGE CAMPBELL |
| WILLIAMSON COUNTY BOARD OF EDUCATION, et al., | ) MAGISTRATE JUDGE FRENSLEY ) ) |
| Defendants. | ) ) |

## MEMORANDUM

Pending before the Court are motions to dismiss filed by the Tennessee Department of Education and Penny Schwinn, Commissioner of the Tennessee Department of Education, (collectively, "the Tennessee Defendants") (Doc. No. 46) and the Williamson County Board of Education and Jason Golden, Director of Williamson County Public Schools, (collectively the "Williamson County Defendants") (Doc. No. 48). Plaintiff filed a consolidated response in opposition to the motions. (Doc. No. 62). Defendants filed separate replies. (Doc. Nos. 65, 66).

For the reasons stated, the motions to dismiss will be GRANTED in part, and DENIED in part.

A. The Act

In May 2021, Tennessee enacted the Tennessee Accommodations for All Children Act ("the Act"). *See* Tenn. Code Ann. § 49-2-801, *et seq*. As applicable to the instant motions, the Act operates by requiring public schools, "to the extent practicable," to provide a "reasonable accommodation" to a student, teacher, or employee who "[d]esires greater privacy when using a multi-occupancy restroom or changing facility designated for [their] sex and located within a

public school building." Tenn. Code Ann. § 49-2-803. The Act defines a "reasonable accommodation" as follows:

> "Reasonable accommodation" includes, but is not limited to, access to a single-occupancy restroom or changing facility or use of an employee restroom or changing facility. "Reasonable accommodation" does not include the following:
>
> (A) Access to a restroom or changing facility that is designated for use by members of the opposite sex while members of the opposite sex are present or could be present;
>
> (B) Requesting that a school construct, remodel, or in any way perform physical or structural changes to a school facility; or
>
> (C) Requesting that a school limit access to a restroom or changing facility that is designated for use by members of the opposite sex, if limiting access results in a violation of state or local building codes or standards[.]

Tenn. Code Ann. § 49-2-802(2). The Act defines "sex" to mean "a person's immutable biological sex as determined by anatomy and genetics existing at the time of birth." *Id*. § 49-2-802(4).

Finally, the Act provides students, their parents or legal guardians, teachers, and employees a private right of action to sue public school systems for "psychological, emotional, and physical harm," including monetary damages and "reasonable attorney fees and costs," if they "encounter[] a member of the opposite sex [defined as sex at birth] in a multi-occupancy restroom or changing facility located in a public school building … [and] the public school intentionally allowed a member of the opposite sex [defined as sex at birth] to enter the multi-occupancy restroom or changing facility while other persons were present." Tenn. Code Ann. § 49-2-805(1)(A)-(C).

## B. D.H.

Plaintiff D.H. is a nine-year-old transgender girl.[1] (Compl., Doc. No. 1, ¶ 25). She explains that this means that although she was assigned male sex at birth, she has a female gender identity. (*Id.*, ¶ 30). Plaintiff uses "she/her" pronouns and lives socially as a girl – for example, she wears her hair long and dresses in a manner typically associated with girls. (*Id.*, ¶¶ 32, 47, 48, 53).

Plaintiff attends a public elementary school (the "elementary school") in Williamson County, Tennessee. (*Id.*, ¶ 2). Due to potential liability created by the Act, the elementary school does not allow Plaintiff to use the multi-occupancy girls' restroom. (*Id.* ¶¶ 58-59, 102). Instead, the elementary school requires her to use single-occupancy restroom facilities. (*Id.*, ¶¶ 58). Plaintiff claims the elementary school's insistence that she use these restrooms "isolate[s] her and distinguish[es] her from her classmates and exacerbate[s] the stress and anxiety she experience[s] while trying to fit in and avoid being stigmatized on the basis of her sex and gender identity." (*Id.* at ¶ 64). In addition, she asserts that each of the single-occupancy restrooms presents unique issues, including distance from her class, safety, and cleanliness. (*Id.* at ¶¶ 59-63).

Plaintiff filed this action against the Williamson County Board of Education and Jason Golden, Director of Williamson County Public Schools, and the Tennessee Department of Education and Penny Schwinn, Commissioner of the Tennessee Department of Education, challenging the Act as violative of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*. She seeks to enjoin enforcement of "the [Act] or any other law, custom, or policy that precludes [her] from using (i) multi-occupancy restrooms and changing facilities located within a

---

[1] When the Complaint was filed, D.H. was eight years old. (Doc. No. 1, ¶ 2). She has since turned nine. The Court uses D.H.'s preferred pronouns (she/her/hers) throughout.

public school building that correspond with her gender identity, rather than her gender assigned at birth; and (ii) multi-occupancy sleeping quarters while attending a public school-sponsored activity that correspond with her gender identity, rather than her gender assigned at birth," and to require Defendant to permit her and other individuals to use multi-occupancy restrooms and changing facilities that correspond with their gender identity. (*See* Compl. at PageID# 35 ("Prayer for Relief")). Plaintiff also seeks to require Defendants to correct all school records to reflect her female gender. (Compl., Doc. No. 1 at PageID# 36).

**C. Procedural Background**

Plaintiff sought a preliminary injunction to prevent Defendants from enforcing the Act and require them to allow Plaintiff to use the multi-occupancy girls' restroom at the elementary school. (*See* Doc. No. 5). The Court denied Plaintiff's motion for preliminary relief, finding that Plaintiff did not show a likelihood of success on the equal protection or Title IX claims to warrant the "extraordinary and drastic remedy" of preliminary relief. (Doc. No. 55 at 9-10). In reaching this decision, the Court noted that when seeking a preliminary injunction, the movant "faces a burden of proof 'more stringent that the proof required to survive a summary judgment motion.'" (*Id*. at 9-10 (citing *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020))).

Now before the Court are motions to dismiss filed separately by the Tennessee Defendants and the Williamson County Defendants (collectively, "Defendants") arguing that Plaintiff's claims under the Equal Protection Amendment and Title IX should be dismissed for failure to state a claim upon which relief may be granted. (Doc. Nos. 46 and 48). The Williamson County Defendants also argue that Plaintiff's claims should be denied because she has failed to exhaust

4

administrative remedies under Section 504 of the Rehabilitation Act and the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g).

## I. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to Defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

## II. ANALYSIS

### A. Equal Protection

The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is "essentially a direction that all persons similarly situated should be treated alike." *Andrews v. City of Mentor*, 11 F.4th 462, 473 (6th Cir. 2021) (quoting *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir. 2012)). "The Equal Protection Clause prohibits discrimination by government which

5

either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011).

The level of scrutiny a distinction receives depends on the nature of the distinction. "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Under this deferential standard, the law must be upheld if there is "any reasonably conceivable" set of facts that could provide a rational basis for the classification, and the state need not present any evidence. *FCC v. Beach Comm., Inc.*, 508 U.S. 307, 313 (1993).

Classifications based on sex, however, have long been recognized as a quasi-suspect classification subject to intermediate scrutiny. *See City of Cleburne*, 473 U.S. at 440 (affirming that sex "generally provides no sensible ground for differential treatment"); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994); *United States v. Virginia*, 518 U.S. 515 (1996). Under intermediate scrutiny, a challenged classification will be sustained so long as it is "substantially related to an important government objective." *Clark v. Jeter*, 486 U.S. 456, 461 (1988).

As an initial matter, it is important to note that Plaintiff is not challenging "the designation of male and female restrooms, but the policy regarding who can use those restrooms – *i.e.*, the policy that students may only use the restroom corresponding with their biological sex as determined by anatomy and genetics at the time of birth." (*See* Doc. No. 62 at 7-8 (citing Memorandum, Doc. No. 55 at 14-15)).

Although the Court previously held that Plaintiff did not show a likelihood of success on the merits of her equal protection claim to warrant the "extraordinary and drastic remedy" of preliminary relief, to survive a motion to dismiss, she need only state a plausible claim for relief. She has done so.

As previously stated, the elementary school's refusal to allow Plaintiff to use the girls' restroom is "the direct (and likely intended) result of the Act." (Doc. No. 55 at 16). Plaintiff has plausibly alleged that she has been prohibited from using the female bathroom on the basis of sex – specifically, as defined by the Act, her "immutable biological sex as determined by anatomy and genetics existing at the time of birth."

Here, the parties agree the bathroom policy clearly involves classifications based on sex. Accordingly, intermediate scrutiny applies.[2] *See City of Cleburne*, 473 U.S. at 440; (*see also*, Doc. No. 55 at 15). Accordingly, the challenged classification will not violate the Equal Protection Clause if it is "substantially related to an important government objective." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Defendants assert the Act and school bathroom policy serve the important government objectives of privacy and safety. There is no doubt that privacy and safety are important government interests. However, considering that this case involves the privacy and safety and bathroom usage by students within an elementary school, the practical relationship between the government's interest in safety and privacy appears less substantial than it might under other circumstances. At this stage in the case, where there has been little development of the record, it remains to be seen whether the Act and the bathroom policy are substantially related to government interests in privacy and safety.

---

[2] The Sixth Circuit has recently held that, absent a change in law, "rational basis review applies to transgender-based classifications." *See L.W. v. Skrmetti*, 73 F.4th 408, 420 (6th Cir. 2023). Here, the bathroom policy clearly involves classifications based on sex. Accordingly, intermediate scrutiny applies, and the Court need not consider whether the law survives rational basis review.

7

The Williamson County Defendants also argue that the elementary school policy is rationally related to their interest in complying with state law and in safeguarding public funds. (*See* Doc. No. 49 at 10-11). Indeed, the Act exposes schools to lawsuits from third parties if they fail to implement policies restricting bathroom use as detailed in the Act. That the challenged bathroom policy was implemented in response to the Act is not grounds to dismiss the equal protection claim against the Williamson County Defendants. Not only is this aspect of their argument based on rational basis review, rather than intermediate scrutiny, the County's financial interests do not take precedence over an individual's constitutional rights. In other words, the success of Plaintiff's equal protection claim against the Williamson County Defendants depends not on the County's interest in preserving its assets, but on whether the Act violates Plaintiff's rights under the Fourteenth Amendment.

Defendants' argument that Plaintiff is not similarly situated to individuals who are biologically female "as determined by anatomy and genetics existing at the time of birth" is beside the point. "To be 'similarly situated' ..., the plaintiff and the comparator must be alike '*in all relevant respects*.'" *Reform Am. v. City of Detroit*, 37 F4th 1138, 1152 (6th Cir. 2022) (emphasis added) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). The issue is not whether Plaintiff has the same physical anatomy as "biological females," but whether this distinction is relevant for purposes of bathroom usage under the circumstances of this case. Indeed, the relevance of the differences and similarities between Plaintiff and "biological females" will almost certainly play a significant role in the Court's consideration of whether the Act and the school policy are substantially related to an important government interest. Consequently, whether Plaintiff is similarly situated in all relevant respects is not an appropriate determination at this stage of the case. *See Loesel v. City of Frankenmuth*, 692 F.3d 452, 463 (6th Cir. 2012) ("[D]etermining

8

whether individuals are similarly situated is generally a factual issue for the jury.") (quoting *Eggleston v. Bieluch*, 203 F. App'x 257, 264 (11th Cir. 2006)).

Construing the allegations in the light most favorable to the Plaintiff, she has plausibly alleged a claim for violation of rights under the Equal Protection Clause. The motions to dismiss the equal protection claim will be **DENIED**.

In reaching this conclusion the Court is cognizant that legislatures and courts across the country are grappling with law and policy dilemmas related to gender identity, which is an area of evolving social norms and legislative action. Neither the Sixth Circuit nor the Supreme Court has directly addressed this question, and courts that have considered similar issues have not consistently arrived at the same conclusion. *See L.W.*, 73 F.4th at 421 (recognizing that "other courts and other judges have taken different approaches to these issues") (citing *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 608 (4th Cir. 2020); *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cty.*, 57 F.4th 791, 801, 803, n.5 (11th Cir. 2022)). If the law changes during the pendency of this litigation, the Court will consider further briefing on the issue.

**B. Title IX**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX includes an "[i]nterpretation with respect to living facilities," which provides: "Notwithstanding anything to the contrary contained in this chapter, nothing contained herein shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes." The implementing regulations concerning that provision confirm that institutions "may provide separate toilets, locker room, and

9

shower facilities on the basis of sex," so long as the "facilities provided for students of one sex [are] comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33.

Plaintiff argues that because the Act prevents her from using the multi-occupancy restrooms that comport with her gender identity, she is excluded from an education program for the purpose of Title IX and suffers discrimination on the basis of sex. (Doc. No. 62 at 18). Plaintiff argues that Title IX's allowance for "separate living facilities for the different sexes" does not permit schools to exclude a transgender girl like D.H. from the girls' bathroom simply because her sex assigned at birth was male. (*Id*. at 20).

As the Court previously held:

> Acceptance of Plaintiff's argument requires either that Title IX allows for the provision of separate bathrooms, but does not mandate who may use them, or that "sex" encompasses "gender identity." The Court is not persuaded by either of these readings of the statute. First, the statute states that educational institutions are not prohibited from "maintaining separate living facilities *for* the different sexes." 20 U.S.C. § 1686 (emphasis added). Any argument that the statute merely allows for the existence of separate restrooms, but does not allow schools to limit access to the restroom to the sex for which it is designated is untenable and appears to contradict the very purpose of allowing separate facilities.

(Doc. No. 55 at 20).

Again, "[a]bsent indication that 'sex,' as it is used in the statute, means something more expansive that "biological sex," the Court presumes "sex" has its ordinary meaning. (*Id*. at 21 (citing *Grimm v. Gloucester Cty. Sch. Bd*., 972 F.3d 586, 632 (4th Cir. 2020), cert. denied, 141 S. Ct. 2878 (2021) (Niemeyer, J. dissenting) (finding the ordinary meaning of "sex" refers to "the *physiological* distinctions between males and females") (collecting dictionary definitions)).

The Complaint confirms that Plaintiff's biological sex and her sex at birth are the same – she contends only that her gender is female. (Doc. No. 1 at ¶ 2). Because Title IX specifically allows schools to maintain sex-separated bathrooms "for the different sexes," requiring Plaintiff

to use the restroom assigned to her biological sex does not violate Title IX. Accordingly, Plaintiff fails to state a claim under Title IX, and the motions to dismiss this claim will be **GRANTED**.

C. Exhaustion of Administrative Remedies

Williamson County Defendants argue Plaintiff's claims should be dismissed because Plaintiff has failed to exhaust administrative remedies under Section 504 of the Rehabilitation Act. (Doc. No. 49 at 18). They contend that because Plaintiff's access to restrooms are addressed in her 504 plan, the "gravamen of these allegations is that Plaintiff is being denied a free appropriate public education by not being allowed to use the multi-occupancy girls' restrooms." (*Id*. at 19). The administrative exhaustion requirement is present "when the gravamen of a complaint seeks redress for the school's failure to provide a [free appropriate public education], even if not phrased or framed in precisely that way." *See Fry v. Napoleon Cty. Sch*., 580 U.S. 154, 170 (2017). However, when the lawsuit does not seek relief for denial of a free appropriate public education, exhaustion is not required. *Id*. at 168.

The Court is not persuaded that Plaintiff is bringing claims challenging the adequacy of her education. Instead, the gravamen of her claims is discrimination. That being the case, exhaustion under Section 504 of the Rehabilitation Act is not required. *See id*.

D. School Records

Plaintiff also seeks to require Defendants to correct all school records to reflect her female gender. (Compl., Doc. No. 1 at PageID# 36). This request for relief is not an independent claim, appears to be untethered from the equal protection and Title IX claims, and has received minimal attention from the parties. To the extent Plaintiff brings a separate claim related to her school records, that claim is **DISMISSED** without prejudice.

### E. Official Capacity Claims

The Williamson County Defendants argue the claims against Jason Golden, Director of Williamson County Public Schools, in his official capacity should be dismissed as redundant of the claims against the Williamson County Board of Education. (Doc. No. 49 at 22). Plaintiff did not respond to this argument. Accordingly, Jason Golden will be **DISMISSED**.

### III.     CONCLUSION

For the reasons stated above, Defendants' motions to dismiss Plaintiff's equal protection claim are **DENIED**, Defendants' motions to dismiss the claim for violation of Title IX are **GRANTED**. To the extent Plaintiff brings a separate claim related to her school records, that claim is **DISMISSED** without prejudice. Finally, the claims against Defendant Jason Golden, in his official capacity, are **DISMISSED**.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE