UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| D.H., | )<br>)<br>) |
|     *Plaintiff*, | )<br>)   Case No. 3:22-cv-00570 |
| v. | )   District Judge William L. Campbell, Jr.<br>)   Magistrate Judge Jeffery S. Frensley |
| WILLIAMSON COUNTY BOARD OF<br>EDUCATION, *et al.*, | )<br>)<br>) |
|     *Defendants*. | )<br>)<br>) |

## MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER

Because the Sixth Circuit's decision in *L.W. v. Skrmetti*, ___ F.4th ___, 2023 WL 6321688 (6th Cir. Sept. 28, 2023), changed the controlling authority relevant to this case, the Tennessee Department and Commissioner of Education[1] have moved this Court to reconsider, in part, its recent Memorandum and Order (D.E. 82 and 83). Defendants submit this Memorandum of Law in support of their motion to reconsider and ask this Court to dismiss D.H.'s Equal Protection claim.

The Sixth Circuit's decision in *L.W.* forecloses the application of intermediate scrutiny to D.H.'s challenge. *L.W.* holds that restrictions stemming from one's transgender status do *not* qualify as sex-based classifications under the Equal Protection Clause. Indeed, the Sixth Circuit considered—and rejected—arguments for intermediate scrutiny virtually identical to the arguments D.H. presented here. The court even indicated that "line-drawing" on the use of "[b]athrooms" by

---

[1] Lizzette Reynolds replaced Penny Schwinn as Commissioner of the Department of Education. Commissioner Reynolds should thus be "automatically substituted as a party." Fed. R. Civ. P. 25(d).

1

transgender persons should not be removed from the "arena of public debate and legislative action" and vested in "one [unelected] Supreme Court" through heightened review. *L.W.*, 2023 WL 6321688 at *18. This Court thus need not guess what tier of scrutiny the Sixth Circuit would apply to the current dispute: *L.W.* resolves the issue in both its reasoning and holdings.

This Court anticipated that the "law [may] change[] during the pendency of this litigation," MTD Memo, D.E. 82, at 643,[2] and it has. *L.W.* now confirms that the sole-remaining Equal Protection claim implicates nothing more than rational-basis review, which the challenged bathroom policy easily satisfies. Rather than require expensive and time-consuming discovery under the incorrect standard, the Court should adhere to *L.W.*, dismiss the remaining Equal Protection claim, and enter judgment for Defendants.

## LEGAL STANDARD

Although the Federal Rules of Civil Procedure do not "explicitly address motions to reconsider interlocutory orders," federal district courts do "'have authority both under common law and Rule 54(b) to reconsider interlocutory orders . . . before entry of final judgment.'" *Parker v. Robertson*, 34 F. Supp. 3d 859, 860-61 (M.D. Tenn. 2014) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)). Courts exercise their discretion to reconsider orders "as justice requires." *Rodriguez*, 89 F. App'x at 959. And they "traditionally will find justification for reconsidering interlocutory orders when there is . . . an intervening change of controlling law." *Trimboli v. Maxim Crane Works, L.P.*, No. 3:18-CV-00346, 2020 WL 3546810, at *4 (M.D. Tenn. June 30, 2020); *see also ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 508 (6th Cir. 2022).

---

[2] Pincites to record materials reference the "Page ID" numbers in the ECF file stamps.

## ARGUMENT

I. *L.W.* **Confirms that D.H.'s Challenge Is Not Sex-Based.**

*L.W.* makes clear that the Equal Protection theory asserted here does not involve a sex-based challenge. D.H.'s core submission is that the Equal Protection Clause prevents the exclusion of transgender persons from bathrooms that match their gender identity. This Court held that—even without a challenge to "the use or existence of sex-separate facilities," PI Reply, D.E. 35, at 247—D.H.'s claim nonetheless warrants intermediate scrutiny because "the bathroom policy clearly involves classifications based on sex." MTD Memo, D.E. 82, at 641 n.2.[3] *L.W.* forecloses that position.

*L.W.* concluded that sex-based discrimination under the Equal Protection Clause occurs only in limited circumstances: when the government uses "sex classifications to bestow unequal treatment on men and women." 2023 WL 6321688, at *16. Courts generally cannot apply heightened scrutiny "[w]hen laws on their face treat both sexes equally." *Id.* at *15. And, like in *L.W.*, the bathroom policy challenged here "treat[s] both sexes equally": Biological males must use the boys' bathrooms, and biological females must use the girls' bathrooms. *Id.* That is, the policy does not "apply one rule for males and another for females" or "prefer one sex over the other." *Id.* at *13. All persons must use the bathroom that matches their biological sex. A straightforward application of *L.W.* thus sinks D.H.'s push for intermediate scrutiny.

*L.W.* also forecloses any workarounds to its clear rule. For one, the court clarified that "[f]or equal protection purposes, as opposed to conversational purposes, a law does not *classify*

---

[3] While the Commissioner and Department of Education do not dispute that the bathroom policy divides restrooms based on biological sex, they have argued that rational basis review nonetheless applies because D.H. disclaims any challenge to the existence of sex-separated facilities. State MTD Memo, D.E. 47, at 304-06; MTD Reply, D.E. 65, at 473-76.

based on sex whenever it uses sex-related language." *Id.* at *15 (cleaned up). That is, "references to 'enduring' differences between men and women do not trigger heightened review." *Id.* at *16 (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)); *see also id.* at *14 (using 18 U.S.C. § 116(a)(1)'s reference to "*female* genital mutilation" as an example of a statute that is *not* subject to heightened review (emphasis added)). A contrary approach, the Sixth Circuit recognized, would mean that every statute, regulation, or policy "having any relation to biological sex could not be regulated without running the gauntlet of skeptical judicial review." *Id.* at *15. That is not the law in the Sixth Circuit. *Id.*

That means that here, D.H. cannot invoke intermediate scrutiny merely because the bathroom policy uses "sex-related language"—male and female—or because the challenge has some "relation to biological sex." *Id.*; *see also* Tenn. Code Ann. § 68-33-103 (referencing "sex"); Ky. Rev. Stat. § 311.372(2) (same). The Court must analyze the actual challenge raised, and D.H. has repeatedly disavowed any challenge to "the use or existence of sex-separate facilities." PI Reply, D.E. 35, at 247; D.H. MTD Resp., D.E. 62, at 447 ("[I]t is worth reiterating that Plaintiff is not alleging that it is the practice itself of having separate boys' and girls' bathrooms that violates Plaintiff's Equal Protection rights."). Rather, D.H. argues that the Equal Protection Clause prevents the exclusion of *transgender persons* from bathrooms that match their gender identity. To state the obvious, that is not an argument that the government has "bestow[ed] unequal treatment on men and women." *L.W.*, 2023 WL 6321688, at *16.

Further, the Sixth Circuit considered—and rejected—D.H.'s contrary position based on *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). Specifically, D.H. claims this suit involves a sex-based classification because, under *Bostock*, "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." D.H. MTD

4

Resp., D.E. 62, at 443 (quoting *Bostock*, 140 S. Ct. at 1741). But the plaintiffs in *L.W.*—and the dissenting opinion in *L.W.*—made that *exact same argument in nearly identical terms*. Appellees' Br. in *Doe 1 v. Thornbury* (consolidated with *L.W. v. Skrmetti*), No. 23-5609, ECF No. 68, at 49; *L.W.*, 2023 WL 6321688, at *32 (White, J., dissenting). The *L.W.* majority simply disagreed, holding that *Bostock*'s reasoning does not apply in the Equal Protection context. *Id.* at *16.

*L.W.* unequivocally cabins the "text-driven reasoning" in *Bostock* "only to Title VII," cogently explaining the distinct analyses under Title VII and the Equal Protection Clause. *Id.* Title VII, for its part, "focuses on but-for discrimination," whereas the Equal Protection Clause "focuses on the denial of equal protection." *Id.* While *Bostock*'s chain of logic may make sense for Title VII's but-for analysis, it does not carry over to the Equal Protection analysis. "[T]his explains why Title VII covers disparate impact claims, and the Fourteenth Amendment does not." *Id.* (citations omitted). The "differently worded provisions" simply do not "mean the same thing." *Id.*

The bottom line: D.H. does not argue that the challenged bathroom policy "bestow[s] unequal treatment on men and women." *Id.* D.H. argues that the bathroom policy improperly "forbids transgender students from using the multi-occupancy restrooms at school that correspond with their gender identity." D.H. MTD Resp., D.E. 62, at 435. That is simply not a sex-based challenge under *L.W.*

## II. *L.W.* Confirms that D.H.'s Challenge Does Not Trigger Heightened Scrutiny.

That leaves D.H. to argue that "policies that exclude transgender persons from using the bathrooms corresponding to their gender identity are subject to heightened scrutiny." D.H. MTD Resp., D.E. 62, at 446. This argument is a complete nonstarter after *L.W.*

There, the Sixth Circuit asserted that "areas of regulation that affect transgender individuals"—like "[b]athrooms"—should not be subject to heightened review. *L.W.*, 2023 WL 6321688, at *18 (emphasis added). The U.S. Constitution, the court explained, "does not offer a principled

way to judge" the "line-drawing dilemmas" that accompany these issues. *Id.* If courts apply heightened scrutiny, it will only remove "trying policy choices" from the "arena of public debate and legislative action" and vest them in "one [unelected] Supreme Court." *Id.* "That is not how a constitutional democracy is supposed to work—or at least works best—when confronting evolving social norms," the court emphasized. *Id.*

What is more, *L.W.* concluded that the "[o]ther considerations" highlighted by the Supreme Court likewise cut against the creation of a "new suspect class" for transgender persons. *Id.* For one, the court held that transgender persons do not "exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group." *Id.* Quite the contrary, transgender status "is not definitively ascertainable at the moment of birth," "is not necessarily immutable," and is not the creator of a "discrete group" because "a huge variety of gender identities and expressions" exist. *Id.* (quotations omitted). *L.W.* further held that "[w]hatever may have been true in the past about our society's treatment of individuals with gender dysphoria," transgender persons are "[n]ot a politically powerless group" today—meaning, there is no "dysfunctional political process . . . supply[ing] a reason for heightened review." *Id.* at *19.

Ultimately, "[t]he bar for recognizing a new suspect class is a high one." *Id.* at *18. The Supreme Court "has not recognized any new constitutionally protected classes in over four decades." *Id.* (quotations omitted). And the Sixth Circuit is not inclined to break new ground in cases alleging discrimination against transgender persons. "[R]ational basis review applies" to D.H.'s challenge. *Id.*

### III. The Challenged Bathroom Policy Easily Satisfies Rational-Basis Review.

The challenged bathroom policy clears rational-basis review. Under that standard, the school's bathroom policy "is presumed to be valid and will be sustained if the classification drawn

6

[in the policy] is rationally related to a legitimate state interest." *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 622 (6th Cir. 1997) (quotations omitted). This test requires the Court to uphold the challenged policy "if there is any reasonably conceivable state of facts" or "plausible" justification that rationally connects the policy's classification to legitimate government ends. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (quotation omitted). "[T]hose attacking the rationality of the . . . classification have the burden to negative every conceivable basis which might support it." *Id.* at 315 (quotations omitted).

Here, "[p]lenty of rational bases exist for the[ challenged] law[], with or without evidence." *See L.W.*, 2023 WL 6321688, at *20. The Commissioner and Department of Education have briefed the governmental interests in privacy and safety. State MTD Memo, D.E. 47, at 310-11; MTD Reply, D.E. 65, at 476. This Court has recognized the legitimacy of those interests. MTD Memo, D.E. 82, at 641; PI Memo, D.E. 55, at 396-97. And there is no good faith argument that sex-separated bathrooms have no plausible justification related to the State's interests. There is thus no need for "after-the-fact evidentiary debates" in this case. *L.W.*, 2023 WL 6321688, at *20.

Rational basis review "is a paradigm of judicial restraint," not a "license for courts to judge the wisdom, fairness, or logic of [policy] choices." *Beach*, 508 U.S. at 313-14. D.H. may disagree with the policy choices regarding transgender persons' access to bathrooms, but the challenged practice is undoubtedly rational.

## **CONCLUSION**

The Court should dismiss Plaintiff's Equal Protection claim in light of *L.W.* and enter judgment for Defendants.

7

Case 3:22-cv-00570   Document 91   Filed 10/04/23   Page 7 of 9 PageID #: 676

Dated: October 4, 2023

Respectfully submitted,

JONATHAN SKRMETTI
  *Attorney General & Reporter*

ANDRÉE S. BLUMSTEIN
  *Solicitor General*

*/s/ James Matthew Rice*
JAMES MATTHEW RICE
  *Associate Solicitor General &*
  *Special Assistant to the Solicitor General*

GABRIEL KRIMM
  *Assistant Solicitor General*

Office of the Tennessee
  Attorney General & Reporter
P.O. Box 20207
Nashville, TN 37202-0207
(615) 532-6026
Matt.Rice@ag.tn.gov

*Counsel for the Tennessee Department and Commissioner of Education*

## CERTIFICATE OF SERVICE

I certify that I filed the above document using the Court's CM/ECF system on October 4, 2023, which electronically served a copy to all counsel of record, namely:

**Adam S. Lurie**
**Ami Rakesh Patel**
**Jason Starr**
**Tricia Herzfeld**
  *Counsel for D.H.*

**Courtney M. King**
**Lisa M. Carson**
  *Counsel for the Williamson County*
    *Board of Education and*
  *Jason Golden in his official capacity as*
    *Director of the Williamson County Schools*

**James Matthew Rice**
**Gabriel Krimm**
  *Counsel for the Tennessee*
    *Department of Education and*
  *Lizzette Reynolds in her official capacity as*
    *Commissioner of the Tennessee*
    *Department of Education*

*/s/James Matthew Rice*
James Matthew Rice
