IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| D.H., a minor, by her next friends A.H., mother, and E.H. father, | ) ) ) |
| Plaintiff, | ) NO. 3:22-cv-00570 ) |
| v. | ) JUDGE CAMPBELL ) MAGISTRATE JUDGE |
| WILLIAMSON COUNTY BOARD OF EDUCATION, ET AL., | ) FRENSLEY ) ) |
| Defendants. | ) |

## MEMORANDUM

Pending before the Court are Defendants Tennessee Department of Education ("TDOE"), Commissioner of Education Penny Schwinn[1] ("Commissioner"), and the Williamson County Board of Education's ("WCBOE") motions to reconsider. (Doc. Nos. 90, 93). For the reasons stated below, Defendants' motions are **GRANTED**.

### I. FACTUAL BACKGROUND[2]

In May 2021, Tennessee enacted the Tennessee Accommodations for All Children Act ("the Act"). *See* Tenn. Code Ann. § 49-2-801, *et seq*. As applicable to the instant motions, the Act operates by requiring public schools, "to the extent practicable," to provide a "reasonable accommodation" to a student, teacher, or employee who "[d]esires greater privacy when using a multi-occupancy restroom or changing facility designated for [their] sex and located within a public school building." Tenn. Code Ann. § 49-2-803. The Act defines a "reasonable accommodation" as follows:

---

[1] Lizzette Reynolds replaced Penny Schwinn as Commissioner of the Department of Education and has been substituted in as a party.
[2] A more complete summary of the facts is available in the Court's Memorandum Opinion addressing Defendants' Motions to Dismiss. (*See* Doc. No. 82).

> "Reasonable accommodation" includes, but is not limited to, access to a single-occupancy restroom or changing facility or use of an employee restroom or changing facility. "Reasonable accommodation" does not include the following:
>
>> (A) Access to a restroom or changing facility that is designated for use by members of the opposite sex while members of the opposite sex are present or could be present;
>> (B) Requesting that a school construct, remodel, or in any way perform physical or structural changes to a school facility; or
>> (C) Requesting that a school limit access to a restroom or changing facility that is designated for use by members of the opposite sex, if limiting access results in a violation of state or local building codes or standards[.]

Tenn. Code Ann. § 49-2-802(2). The Act defines "sex" to mean "a person's immutable biological sex as determined by anatomy and genetics existing at the time of birth." *Id.* § 49-2-802(4).

Finally, the Act provides students, their parents or legal guardians, teachers, and employees a private right of action to sue public school systems for "psychological, emotional, and physical harm," including monetary damages and "reasonable attorney fees and costs," if they "encounter[] a member of the opposite sex [defined as sex at birth] in a multi-occupancy restroom or changing facility located in a public school building … [and] the public school intentionally allowed a member of the opposite sex [defined as sex at birth] to enter the multi-occupancy restroom or changing facility while other persons were present." Tenn. Code Ann. § 49-2-805(1)(A)-(C).

At the time of filing the Complaint, Plaintiff D.H. was a nine-year-old transgender girl and a student at a public elementary school (the "Elementary School") in Williamson County, Tennessee. (Compl., Doc. No. 1, ¶ 2, 25). Due to potential liability created by the Act, the Elementary School does not allow Plaintiff to use the multi-occupancy girls' restroom. (*Id.* ¶¶ 58-59, 102). Instead, the Elementary School requires her to use single-occupancy restroom facilities. (*Id.*, ¶¶ 58). Plaintiff claims the Elementary School's insistence that she use these restrooms "isolate[s] her and distinguish[es] her from her classmates and exacerbate[s] the stress and anxiety she experience[s] while trying to fit in and avoid being stigmatized on the basis of her sex and

gender identity." (*Id.*, ¶ 64). In addition, she asserts that each of the single-occupancy restrooms presents unique issues, including distance from her class, safety, and cleanliness. (*Id.*, ¶¶ 59-63).

Plaintiff filed this action challenging the Act as violative of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*. She seeks to enjoin enforcement of "the [Act] or any other law, custom, or policy that precludes [her] from using (i) multi-occupancy restrooms and changing facilities located within a public school building that correspond with her gender identity, rather than her gender assigned at birth; and (ii) multi-occupancy sleeping quarters while attending a public school-sponsored activity that correspond with her gender identity, rather than her gender assigned at birth," and to require Defendant to permit her and other individuals to use multi-occupancy restrooms and changing facilities that correspond with their gender identity. (See Compl. at PageID# 35 ("Prayer for Relief")). Plaintiff also seeks to require Defendants to correct all school records to reflect her female gender. (Compl., Doc. No. 1 at PageID# 36).

Defendants filed motions to dismiss arguing that Plaintiff's claims should be dismissed for failure to state a claim on which relief may be granted. WCBOE also argued that Plaintiff's claims should be denied because she failed to exhaust her administrative remedies under Section 504 of the Rehabilitation Act and the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g). The Court granted Defendants' motions to dismiss as to Plaintiff's Title IX claim but denied them as to the Equal Protection claim. Defendants moved to reconsider the Court's previous Equal Protection analysis.

## II. STANDARD OF REVIEW

While the Federal Rules of Civil Procedure fail to explicitly address motions to reconsider interlocutory orders, "[d]istrict courts have authority both under common law and Rule 54(b) to

3

reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). Thus, district courts may "afford such relief from interlocutory orders as justice requires." *Rodriguez*, 89 F. App'x at 959 (quoting *Citibank N.A. v. FDIC*, 857 F.Supp. 976, 981 (D.D.C.1994)) (internal brackets omitted). Courts traditionally will find justification for reconsidering interlocutory orders when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice. *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (citing *Rodriguez*, 89 F. App'x at 959). This standard "vests significant discretion in district courts." *Rodriguez*, 89 F. App'x at 959 n.7. District courts reviewing motions to reconsider interlocutory rulings "at a minimum" require that there be some clear error in the court's prior decision or that the movant put forth an intervening controlling decision or newly discovered evidence not previously available. *Al-Sadoon v. FISI*Madison Fin. Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn. 2002).

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits

4

attached thereto, public records, items appearing in the record of the case, and exhibits attached to Defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. ANALYSIS

**A. Intervening Change in Controlling Law**

In their motions, Defendants argue that the Court should reconsider its analysis of Plaintiff's Equal Protection claim in light of the Sixth Circuit opinion *L.W. v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023), which Defendants argue constitutes an intervening change in the controlling authority relevant to this case. Defendants TDOE and the Commissioner contend that *L.W.* "forecloses the application of intermediate scrutiny to D.H.'s challenge" and "holds that restrictions stemming from one's transgender status do *not* qualify as sex-based classifications under the Equal Protection Clause." (Doc. No. 91 at PageID # 670) (emphasis in original).

TDOE and the Commissioner also argue that the Act and Elementary School policy at issue in this case do not involve a sex-based challenge because "D.H.'s core submission is that the Equal Protection Clause prevents the exclusion of transgender persons from bathrooms that match their gender identity" and "*L.W.* concluded that sex-based discrimination under the Equal Protection Clause occurs only in limited circumstances: when the government uses 'sex classifications to bestow unequal treatment on men and women.'" (*Id.* at PageID # 672) (internal citation omitted). TDOE and the Commissioner also argue that the challenged policy "treat[s] both sexes equally" and "does not 'apply one rule for males and another for females' or 'prefer one sex over the other.'" (*Id.*) (internal citation omitted).

Similarly, Defendant WCBOE argues that *L.W.* held "that while sex-based classifications that perpetuate invidious stereotypes or unfairly allocate benefits and burdens trigger intermediate

5

scrutiny, 'those harms, and the necessity of heightened review, will not be present every time that sex factors into a government decision'" and intermediate scrutiny does not apply in this case because the Act and policy do "not 'perpetuate[] invidious stereotypes or unfairly allocate[] benefits and burdens' on the basis of sex." (Doc. No. 94 at PageID # 686 – 687) (internal citations omitted). WCBOE argues that the facilities at Plaintiff's Elementary School "are U-shaped restrooms where girls' and boys' facilities are separated but share a common handwashing trough" and "Plaintiff has not alleged that these facilities differ in sex or quality…[the Act and policy] simply '[r]ecogniz[e] and respect[] biological differences.'" (Doc. No. 94 at PageID # 687) (internal citation omitted). Accordingly, Defendants contend that rational basis review applies and that the deferential standard is satisfied because Defendants have governmental interests in safety and privacy. (Doc. No. 91 at PageID # 675; Doc. No. 94 at PageID # 688).

In *L.W. v. Skrmetti*, the Sixth Circuit Court of Appeals considered whether the Due Process and Equal Protection clauses prohibited states from limiting certain sex-transition treatments for minors. 83 F.4th 460 (6th Cir. 2023). At issue was a Tennessee statute, the Prohibition on Medical Procedures Performed on Minors Related to Sexual Identity (the "Medical Procedures Act"), and a Kentucky statute. The Medical Procedures Act prohibited certain medical treatments for minors with gender dysphoria, including banning healthcare providers from administering or offering to administer medical procedures to a minor "'for the purpose of' either '[e]nabling a minor to identify with, or live as, a purported identity inconsistent with the minor's sex' or '[t]reating purported discomfort or distress from a discordance between the minor's sex and asserted identity.'" *Id.* at 468 (internal citation omitted). The Medical Procedures Act contained an exception for the use of puberty blockers and hormones to treat congenital conditions, precocious puberty, disease, or physical injury and had a continuing care exception that permitted healthcare

6

providers to continue administering a long-term treatment that began before the act's effective date. The plaintiffs in *L.W.* challenged the Medical Procedures Act's ban on puberty blockers, hormone therapy, and sex transition surgeries for children and moved for a preliminary injunction to prevent those provisions of the act from going into effect. The Sixth Circuit analyzed the Medical Procedures Act under the Equal Protection Clause and noted that the alleged classifications in the law could potentially be "premised on age, medical condition, or sex." *Id.* at 479. The court held that rational basis review applied to both the age-based and medical condition classifications and that while intermediate scrutiny applies to sex-based classifications, no sex-based discrimination occurred under either statute because "[t]he laws regulate sex-transition treatments for all minors, regardless of sex" and "[s]uch an across-the-board regulation lacks any of the hallmarks of sex discrimination" because "it does not prefer one sex over the other" or "bestow benefits or burdens based on sex" and "it does not apply one rule for males and another for females." *Id.* at 480. The Court in *L.W.* held that "[o]ne simply cannot define, or create, a protected class *solely* by the nature of a denied medical benefit: in this instance childhood treatment for gender dysphoria." *Id.* at 482. The Court also provided the following analysis regarding intermediate scrutiny:

> What of language in the cases saying that "all" sex-based classifications receive heightened review? *Virginia*, 518 U.S. at 555, 116 S.Ct. 2264 (quoting *J.E.B.*, 511 U.S. at 136, 114 S.Ct. 1419); *see Hogan*, 458 U.S. at 724–25, 102 S.Ct. 3331. The laws in those cases used sex classifications to bestow unequal treatment on men and women. *See Virginia*, 518 U.S. at 519, 116 S.Ct. 2264 (excluding female applicants); *Hogan*, 458 U.S. at 719, 102 S.Ct. 3331 (excluding male applicants). Those cases show only that the government cannot classify individuals by sex when doing so perpetuates invidious stereotypes or unfairly allocates benefits and burdens. *J.E.B.*, 511 U.S. at 131, 137, 114 S.Ct. 1419 (striking potential jurors "based on gender stereotypes"). But those harms, and the necessity of heightened review, will not be present every time that sex factors into a government decision. As we have already shown, heightened review does not apply in the context of laws that regulate medical procedures unique to one sex or the other. *See Dobbs*, 142 S. Ct. at 2245–46; *Geduldig*, 417 U.S. at 496 n.20, 94 S.Ct. 2485. Likewise, the

7

> government does not trigger heightened review when it houses men and women separately at a prison without making distinctions in funding or programming available to members of each sex. *Cf. Women Prisoners of D.C. Dep't of Corrs. v. District of Columbia*, 93 F.3d 910, 926 (D.C. Cir. 1996). The same is true of a sex-based decision to place urinals only in men's rooms. So too with these laws. Their necessary references to "enduring" differences between men and women do not trigger heightened review. *Virginia*, 518 U.S. at 533, 116 S.Ct. 2264.

*Id.* at 483-484. Ultimately, the Court held that no sex-based discrimination occurred in the challenged laws and that "neither the Supreme Court nor this Court has recognized transgender status as a suspect class" and "[u]ntil that changes, rational basis review applies." *Id.* at 486.

Moreover, in *Gore v. Lee*, the Sixth Circuit Court of Appeals considered whether a Tennessee law prohibiting transgender individuals from changing the biological sex listed on their birth certificates violated their rights under the Equal Protection Clause. The Court in *Gore* held that "[t]he distinction also treats the sexes identically. Under Tennessee law, anyone may amend their certificate if they provide 'documentary evidence' showing the certificate contains 'incorrect data.'… That policy does not impose any special restraints on, and does not provide any special benefits to, applicants due to their sex. It does not impose 'one rule for' males and 'another for' females… Nor does it prefer one sex over another when individuals try to amend their birth certificates… The amendment application does not ask for the sex of the individual, and eligibility for it does not turn on the sex of the individual. The policy treats the sexes equally." *Id.* at 555. The Court noted that "[w]hen a law does not ascribe different benefits and burdens to the sexes, that law does not discriminate based on sex, even if sex 'factors into' the law's application." *Id.* at 556. The Sixth Circuit rejected plaintiffs' argument that "a government may not allocate benefits and burdens based on 'sex' if the term does not cover gender identity as opposed to solely biological sex" and ultimately held that the challenged policy "treats both sexes equally, and as

8

Case 3:22-cv-00570   Document 134   Filed 09/04/24   Page 8 of 10 PageID #: 912

elaborated below there is no fundamental right to a birth certificate recording gender identity instead of biological sex" and applied rational basis. *Id.* at 557.

The Court finds that *L.W.* and *Gore* are analogous to the present case. Here, Plaintiff is not challenging Defendants' policy of designating separate facilities based on biological sex. Instead, all parties appear to agree that Plaintiff is challenging her inability to use the restroom corresponding with her gender identity. In other words, although Plaintiff identifies as a girl, the Act prohibits her from using the facilities that correspond to her gender identity, while students who identify with their biological sex at birth are permitted to use such facilities. However, the Act and policy do not prefer one sex over the other, bestow benefits or burdens based on sex, or apply one rule for males and another for females. Moreover, it appears that the bathroom policy is similar in nature to policies such as housing incarcerated men and women separately at a prison or placing urinals only in men's rooms, both of which the Sixth Circuit Court of Appeals has expressly held are "necessary references to 'enduring' differences between men and women" and insufficient to trigger heightened review. *L.W.*, 83 F.4th at 484.

In determining the applicable standard of review regarding Defendants' motions to dismiss, this Court recognized that laws and policies related to gender identify are areas of "evolving social norms and legislative action" and was mindful of the impact changes in controlling law could have on this action. (Doc. No. 82 at PageID # 643). Such changes in the law have occurred since the Court's September 27, 2023, Order (Doc. No. 83), and the Sixth Circuit has since held that rational basis review applies to a law that treats both sexes equally and does not bestow unequal burdens based on sex. The Act and bathroom policy in the present case do so. Accordingly, the Court finds that rational basis, rather than intermediate scrutiny, applies to the Act and bathroom policy.

9

Case 3:22-cv-00570   Document 134   Filed 09/04/24   Page 9 of 10 PageID #: 913

**B. Rational Basis Review**

Rational basis review "does not require States to show that a classification is the only way, the best way, or even the most defensible way to achieve their interests. It requires only that 'some 'plausible' reason' supports the classification, no matter how imprudent or ineffective.'" *Gore v. Lee*, 107 F.4th 548, 561 (6th Cir. 2024) (internal citations omitted).

Defendants contend that the Act and bathroom policy serve governmental interests in privacy and safety and that the challenged policy is "undoubtedly rational". (Doc. No. 91 at PageID # 676). The Court finds that the interests of privacy and safety are sufficient to satisfy rational basis review.

## IV. CONCLUSION

For the reasons stated, Defendants' motions to reconsider (Doc. Nos. 90, 93) are **GRANTED**. The Court's Order entered September 27, 2023, denying Defendants' motion to dismiss Plaintiff's Equal Protection claim (Doc. No. 83) is **VACATED**, and Defendants' motions to dismiss (Doc. Nos. 46, 48) are **GRANTED**.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE